[Civ. No. 15836. First Dist., Div. One. Oct. 20, 1953.]

JENNIE GIACALONE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, Respondent.

James F. Boccardo and Edward J. Niland for Petitioner.

Everett A. Corten and T. Groezinger for Respondent.

Leonard, Hanna & Brophy for Real Party in Interest.

BRAY, J.—Petition by Jennie Giacalone, the widow of Antonio Giacalone, who was killed while working for and on the ranch of William Battaglia, to compel the Industrial Accident Commission to substitute Aetna Casualty & Surety Company in place of Battaglia in certain proceedings before the commission, to dismiss Battaglia therefrom and to restrain the commission from setting or holding any hearing contrary to an agreement between Aetna and Jennie.

The controversy arises over Jennie's contention that Antonio was an independent contractor with, and not an employee of, Battaglia.

### QUESTIONS PRESENTED

1. Is an employer such a party in interest that he may initiate and maintain a proceeding before the commission, independent of the employee, or his dependents, and the insurer?

2. Is section 3755, Labor Code, mandatory?

3. Which takes precedence, a court action first filed or a later proceeding before the commission?

4. Does mandate lie?

RECORD

September 13, 1951, Jennie filed suit against Battaglia in the Santa Clara County Superior Court for damages for the death of Antonio, claiming that the relationship between him and Battaglia was that of independent contractor. This suit is now at issue, and ready for trial. July 7, 1952, Jennie filed with the commission an application for compensation for Antonio's death, alleging the relationship between him and Battaglia to be that of employee and employer. This proceeding was filed to prevent the statute of limitations from running before the civil action could be tried. Jennie claims that she then entered into an agreement with Aetna to the effect that the latter would pay funeral costs and death benefits if the commission ever determined that Antonio was an employee of Battaglia, and that her application might be dismissed without prejudice to being refiled, if she so desired, after the determination of the court action. February 3, 1953, Battaglia filed with the commission an application for adjustment of claim. The commission gave this the same file number as that of Jennie's application. Battaglia alleged that he was the employer, Aetna was his insurer and Antonio was his employee, and asked for ''a determination of my liability with respect to the death of Antonio Giacalone.'' On March 27, 1953, Aetna, pursuant to section 3755 of the Labor Code, filed with the commission a notice of assumption of liability, in which it assumed and agreed to pay ''any compensation to the claimant for which the employer is liable.'' It also filed a motion to be substituted for Battaglia both as a party defendant under Jennie's application and a party applicant under the Battaglia application. It also moved to dismiss Battaglia from Jennie's proceeding. Thereupon Jennie requested that her application be dismissed without prejudice. Battaglia answered Aetna's notice of substitution alleging that he had a right to remain in the proceedings and asked that the notice of assumption of liability be considered merely a stipulation of coverage. On April 7th the commission dismissed Jennie's application. Since that time, Battaglia has been trying to get his application heard, to which both Jennie and Aetna have objected, and Aetna has been trying to get its motions heard. The commission has not specifically set Aetna's motions for hearing but has set and reset general hearings headed under both the Battaglia and Jennie applications (although the latter was dismissed). It has even started hearings at which no evidence was introduced. Jennie

and Aetna have stipulated that the Battaglia application may be removed from the calendar until further action by Jennie. Petitioner claims that the commission has disregarded the agreement to postpone proceedings and intends to proceed. A hearing had been set at the time this petition was filed but has not been held.

1. *Is the Employer a Party In Interest?*

█ Section 5500 of the Labor Code: "The application shall be in writing and shall state the general nature of *any controversy* concerning compensation or *any right or liability* arising out of or incidental thereto . . ."\* Section 5501: "The application may be filed with the commission by *any party in interest* . . ." In *Merino* v. *Pacific Coast Borax Co.,* 124 Cal.App. 336 [12 P.2d 458], Merino had contracted with the company to sack clay. Merino employed one de la Mora to do some of the work. While so employed de la Mora was killed by the collapse of a tank under which he was working. One of his dependents filed with the commission an application for an adjustment of claim for compensation for the death of de la Mora. The company and its insurance carrier were named defendants. Thereafter, at the instance of the company, Merino was made a defendant in the proceeding. The commission made an award to de la Mora's dependent against Merino only. Merino then sued the company for the amount he had been ordered to pay the dependent under the commission's award, on the theory that the accident was due to the company's negligence. In discussing the effect of the proceedings before the commission in which the company had been made a defendant, the court held that the company was "an interested party in the proceeding." (P. 341.) It will be observed that this is a holding that one contracting with an employer of labor is a party in interest in the proceeding brought by the dependent of an injured employee of that employer in the commission to obtain an award for compensation resulting from the death of the employee. Logically, if the contractor is a party in interest in such a proceeding, much more so is the employer. While the exact question of whether an employer is such a party has never been determined in California, this decision is well-nigh determinative.

A near approach to a consideration of the subject appears in *Industrial Indem. Exch.* v. *Industrial Acc. Com.,* 26 Cal.2d 130 [156 P.2d 926], where the court stated (p. 138): "Peti-

---

\*Unless otherwise noted, emphasis herein is ours.

tioner also challenges the jurisdiction of the commission to make the award in this case on the ground that the proceedings before it were initiated by the general employer without the consent and against the wishes of the injured employee. While the commission's power to make an award in such circumstances would appear to find support in *Independence Indem. Co.* v. *Industrial Acc. Com.*, 2 Cal.2d 397 [41 P.2d 320], we do not find it necessary to determine that question in this case.'' The reason given was that the employee filed an answer requesting relief to the general employer's application. The court then said that there could be no doubt of the propriety of the joinder of the special employer and its insurance carrier on the application of the special employer who had filed the proceeding, pointing out that section 5307 of the Labor Code provided for such joinder.

In *Northwestern R. Co.* v. *Industrial Acc. Com.*, 184 Cal. 484 [194 P. 31], in holding that a wife is a party in interest and may apply to the commission for an award for the injury of her husband, the court said: ''The statute expressly authorizes the application by any party in interest.'' (P. 486.) In *Independence Indem. Co.* v. *Industrial Acc. Com.*, 2 Cal.2d 397 [41 P.2d 320], in upholding the right of a doctor who treated an injured employee to bring a proceeding in the commission for his services, the court pointed out that the then section 57 of the Workmen's Compensation Act (now Lab. Code § 5307 (d)) provided for the '' '. . . joinder in the same proceeding of all persons interested therein, whether as employer, insurance carrier, employee, dependent, creditor or otherwise.' '' (P. 407.) The court also stated (p. 408): ''It is a fairly common practice for proceedings to be initiated by an employer or insurance carrier, and certainly even under a narrow construction of section 17 (a) of the act, they are parties in interest entitled to do so.''

The legislative history of sections 5500 and 5501 sheds some light on the subject. The contents of these sections plus that of 5502, which relates to the time of hearing the application, were comprised in the first sentence of section 17 (a) of the Workmen's Compensation Insurance and Safety Act of 1917. It provided in effect that the application could be filed by ''any party in interest'' and should state the general nature of any dispute or controversy concerning compensation or any right *or liability* arising out of, or incidental thereto, and provided for the fixing of the hearing of the application. While it now takes three sections to express what was there expressed in

one sentence, the reference still is to an application by "any party in interest." Obviously an employer has a real interest in having a determination as to whether an injured person was his employee or an independent contractor. The employer, unless he qualifies as a self-insurer, is required to have compensation insurance. He is not compelled to, and may not have, liability coverage. He is interested in having a quick determination of the status of the injured person and of whether his compensation carrier is to take care of him, or whether his liability is one for which the carrier is not responsible. Certainly, in the words of section 5500, he is interested in a "controversy concerning compensation" and a "liability arising out of or incidental thereto."

An employer has a real interest in the application of the act, for it relieves him of civil liability, attendant costs and large jury verdicts. In *Mountain Timber Co.* v. *Washington*, 243 U.S. 219 [37 S.Ct. 260, 61 L.Ed. 685], the court, referring to the Washington Workmen's Compensation Act, said (p. 234: ". . . it is evident that the employer's exemption from liability to private action is an essential part of the legislative scheme and the *quid pro quo* for the burdens imposed upon him . . ." (Emphasis not added.)

Petitioner contends that even conceding that the employer is a party in interest, the provisions of the Labor Code show that it was never contemplated that a proceeding might be brought or maintained by the employer over the employee's objection. She points out that section 5507 provides that "If an application shows upon its face that *the applicant is not entitled to compensation*" the commission may, after the applicant has an opportunity to submit his "claim," dismiss the application and contends that the applicant must be one entitled to compensation or having a claim, as to neither of which an employer qualifies.

In *Metropolitan Casualty Ins. Co.* v. *Maloney*, 56 Ga.App. 74 [192 S.E. 320], the court was construing the Georgia Workmen's Compensation Act. It provided that where an employer and an injured employee failed to reach an agreement in regard to compensation under the act, either one might apply to the Department of Industrial Relations for a hearing. One section barred the right to compensation unless a "claim" was filed within one year. The employer filed a proceeding to have his liability determined. The injured employee filed an answer. It was contended that this answer did not constitute a "claim" and that as the year had expired, the

commission had no jurisdiction to make an award to the employee. The court held that the word "claim" in the statute was coextensive with "case" and that the "case" or "claim" of both employer and employee were filed in time.

We do not believe that the Legislature intended by this language to bar the right of a party in interest to file his application to have his "liability" determined, a right given in preceding sections. Particularly is this so when we consider section 21, article XX of the Constitution (the section giving the Legislature plenary power to set up the workmen's compensation system) which provides that the administrative body which the Legislature might set up (the Industrial Accident Commission) should have full authority to "determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases *expeditiously, inexpensively, and without incumbrance of any character* . . ." An employer, then, having the right to initiate a proceeding, it logically follows that he must necessarily have the right to maintain it. But, says petitioner, section 3755 denies him that right.

## 2. *Is Section 3755 Mandatory?*

It provides that if the employer's insurer files the notice of assumption of liability as there provided, the employer shall be relieved from liability for compensation to the injured workman and "The insurer shall, without further notice, be substituted in place of the employer" in the proceeding "and the employer shall be dismissed therefrom." In determining the effect of the word "shall" in this section it is well to regard its legislative history. Sections 30 and 31 of the Workmen's Compensation and Safety Act of 1917 were not concerned with the subject of procedure before the commission but dealt primarily with the subject of insurance. When the Labor Code was adopted section 30 (a) and a part of 30 (b) were incorporated into Labor Code sections 3750-3754. The remaining portion of section 30 (b), all of subdivisions (c) and (d) and section 31 dealing with limitations in the insurance policy and providing that the employer may not insure against liability for misconduct were incorporated in sections 11650 et seq. of the Insurance Code. Section 30 (e) which included the provision for substitution of the insurer and dismissal of the employer was broken up and incorporated into sections 3755-3759 of the Labor Code. An

examination of section 30 (e) clearly demonstrates that it was dealing primarily with a simplified method of carrying into effect without delay the provisions of the insurance policy which section 30 (c) (now Ins. Code, § 11651) and section 30 (d) (now Ins. Code, § 11656) require to be inserted in every compensation policy to the effect that the insurer will be liable directly to the employee and that the employee shall have a first lien on the amount due the employer under the policy. When the section was codified no changes in substance were made. Section 2, Labor Code, provides that under such circumstances the provisions shall be construed as restatements and continuations of the old and not as new enactments.

That section 3755 was never intended to be mandatory under all conditions is well illustrated by the situation when the employee claims he was injured through the wilful misconduct of the employer. Section 31 (b) (now Ins. Code, § 11661) provides that insurers may not insure the employer against liability for wilful misconduct. Certainly if under section 3755 the insurer files a notice of assumption of liability to the full extent of its policy, the issue of wilful misconduct would still be in the proceeding and the insurer could not be substituted for the employer. There is nothing in the section nor the act which forces the construction that where there is a conflict in interest between the employer and the insurer the employer must be dismissed. There may be such a conflict here. It would be to the insurer's interest to join with the widow to delay this proceeding in which the insurer is supposed to take the laboring oar for his insured until the trial of the civil action in which the insurer has no interest and in which the insured has the laboring oar. Moreover, it would be to the insurer's interest to join with the widow in an endeavor to prove her husband's status as that of an independent contractor. In *Employers' Liab. Assur. Corp.* v. *Industrial Acc. Com.*, 177 Cal. 771 [171 P. 935], it was held that the Workmen's Compensation Act provides "A scheme of insurance, for the protection *both* of the employer and the employee . . ." To permit that scheme to place the employer in a position where he might be at the mercy of his insurer, would not only be unjust but could only be accomplished by an interpretation contrary to the spirit of the Constitution and the act, by requiring a strict rather than a liberal interpretation of its provisions.

■ It is obvious that section 3755 is for the employer's benefit, as well as that of the insurer. Actually, in removing the employer from the proceeding, it deprives the employee of the right to a judgment against both the employer and the insurer, in spite of the fact that the policy must provide that the insurer is directly and primarily liable to the claimant (Ins. Code, § 11651) and that the claimant has a first lien thereunder (Ins. Code, § 11656). In *Weiser* v. *Industrial Acc. Com.*, 172 Cal. 538 [157 P. 593], it was held that where an employer is properly insured at the time of the accident he is entitled to be relieved from liability to the employee for compensation, even though his insurance carrier subsequent to the injury to the employee is deprived of the right to transact further business in this state. Certainly such a situation does not benefit the employee.

In construing section 3755 with section 5500, two rules of construction, among others, should be kept in mind: (a) The rule that where possible every word should be given effect. The word "liability" in section 5500 can apparently only be given effect by holding that the employer has a right to have his "liability" determined. (b) The rule that statutes are to be construed to harmonize with one another.

Respondent contends that the dismissal portion of section 3755 by its terms does not apply to a proceeding initiated by the employer. The first part of the section states that if the notice of assumption of liability is served upon "any compensation claimant" the employer shall be relieved from liability to the claimant. But, the substitution of the insurer for the employer and the dismissal of the latter is only *"in any proceeding theretofore or thereafter instituted by such claimant to recover such compensation. . . ."* The proceeding in the commission carries the same number as that given Jennie's application. Section 5303 of the Labor Code provides: "There is but one cause of action for each transaction coming within the provisions" of the Workmen's Compensation Act. "All claims brought . . . , or any other matter arising out of such transactions may, in the discretion of the commission, be joined in the same proceeding at any time."

■ While there may be merit in respondent's contention, we prefer to hold that the section never contemplated that where there developed a conflict of interest between the employer and the insurer, the former could be dismissed from the proceedings. Thus, the statement in section 15 of the Labor Code that the word "shall" is mandatory does not

apply. (See *Estate of Mitchell*, 20 Cal.2d 48, 51 [123 P.2d 503], quoting from *In re Chadbourne*, 15 Cal.App. 363 [114 P. 1012] : " 'We must assume that the legislature had before it this policy of the law when it enacted the statute in controversy. And while the language upon its face seems to be mandatory, the cardinal canon of interpretation requires, of course, that we give effect to the intention of the lawmakers, though it may seem opposed to the letter of the statute,' . . .'')

### 3. *Precedence of Court Action.*

Petitioner and amicus curiae in the companion case contend that the court action having been filed first requires an abatement or at least a stay of the proceeding in the commission. In *Freire* v. *Matson Navigation Co.*, 19 Cal.2d 8, the court said (p. 10 [118 P.2d 809] ) : "The Workmen's Compensation Act is to be liberally construed in favor of jurisdiction in the commission with the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment. (Lab. Code, § 3202; *Fenton* v. *Industrial Acc. Com.*, 44 Cal.App.2d 379, 382 [112 P.2d 763].) The rule is not altered because a plaintiff believes that he can establish negligence on the part of his employer and brings a civil suit for damages. If the injury falls within the scope of the act, a proceeding thereunder constitutes his exclusive remedy. (Lab. Code, § 3601; see cases cited in 27 Cal.Jur. 262, and 12 Cal.Jur. 10-Yr.Supp. 4, 5.) If an employee is in doubt whether or not his injury is sustained in the course of his employment, he can protect himself against the running of the statute of limitations, and be certain that his claim will be heard in the proper tribunal, by filing both a civil action in the superior court and an application for compensation before the commission. (*Schumacker* v. *Industrial Acc. Com.*, 46 Cal.App.2d 95 [115 Pac.2d 571].)'' The question before this court in the Schumacker case (46 Cal.App.2d 95) was whether a judgment rendered in an action filed in the superior court before a proceeding filed in the Industrial Accident Commission and in which judgment was rendered before the proceeding was heard, was res judicata as to whether the deceased workman had been engaged in interstate or intrastate commerce. In holding that the issue was not raised in the superior court and therefore the judgment could not be res judicata on that subject, this court apparently assumed that had the issue been raised the judgment would have been res judicata, but whether because the action was first filed or first tried does not appear. In *Williams* v.

*Southern Pac. Co.*, 54 Cal.App. 571 [202 P. 356], a widow sued her husband's employer under the Federal Employers' Liability Act for the death of her husband, alleging that he was engaged in interstate commerce. Later she filed a claim with the Industrial Accident Commission alleging that in the court action the employer claimed the husband was engaged in intrastate commerce and asked that the proceeding be held in abeyance until the determination of the court action. When the commission refused to postpone action, the widow applied to the Supreme Court for a writ of prohibition to restrain the commission from proceeding. The application was denied. Thereupon the commission proceeded to make her an award. Later, she was awarded a judgment in the court action. On appeal in the latter action the employer contended that since the superior court first acquired jurisdiction, its determination of any issue before it was conclusive notwithstanding a prior inconsistent determination of the same issue by the commission. "It is not claimed that either the action in the superior court or the proceeding before the commission could have been successfully pleaded in abatement of the prosecution of the other, but respondent cites 15 Corpus Juris, 1161, to the effect that where two tribunals have concurrent jurisdiction over the same parties and subject matter, 'the tribunal where jurisdiction first attaches retains it exclusively, and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue or question properly arising in the case.' At page 1165 of the same volume, however, it is stated that 'the rule is limited to actions which deal either actually or potentially with specific property or objects, and where a suit is strictly *in personam*, nothing more than a personal judgment being sought, there is no objection to a subsequent action in another jurisdiction.' There is some confusion in the decisions because of failure to recognize the limitation just stated. In strictly personal actions the great weight of authority sustains the rule as stated in the case of *Boatmen's Bank* v. *Fritzlen*, 135 Fed. 667 [68 C.C.A. 288], that 'it is not the final judgment in the first suit, but the first final judgment, although it may be in the second suit, that renders the issues in such a case *res adjudicata* in the other court. [Citing a long line of authorities in other jurisdictions.]' '' (Pp. 575-576; emphasis not added.) The court then held (p. 580): "Having recovered judgment for

compensation in the proceeding before the commission by establishing the fact that the deceased was employed in intrastate commerce, and that judgment having become final, she could not recover in the action in the superior court by disproving the same fact on which the first judgment was necessarily based."

In *Goodman Bros.* v. *Superior Court*, 51 Cal.App.2d 297 [124 P.2d 644], the commission had granted an injured employee an award against Goodman Bros. whom it found to be the employer and to be insured. The proceeding in the commission had been filed before a superior court action was filed by the employee against Goodman Bros. in which the employee alleged that his employer was not insured. After the commission made its award Goodman Bros. filed an answer in the court action setting up the commission's award as res judicata of the insurance issue. The court sustained a demurrer to this answer and struck out the plea of res judicata. Goodman Bros. then applied to this court for a writ of prohibition to restrain the court from proceeding with the action, on the ground that the commission's award was res judicata, and the court was thereby deprived of jurisdiction. We held that the award of the commission was res judicata of the question of insurance and approved the statement in *Williams* v. *Southern Pac. Co., supra,* to the effect that as between a civil action and an Industrial Accident Commission proceeding it is the first final judgment that counts, regardless of which action or proceeding was first started.

In *Robbins* v. *Yellow Cab Co.,* 85 Cal.App.2d 811 [193 P.2d 956], it was held that the jurisdiction to determine whether an employee when injured was acting within the scope of her employment was not exclusive in the commission, but that the court in which she had filed a suit contending that she was not so acting had jurisdiction to determine the issue. No proceeding was then pending in the commission. See, also, *Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802 [167 P.2d 729].

██ While the Williams and Goodman cases were dealing with the question of res judicata judgments, there can be no question that they were determining, in effect, that the courts and the commission have concurrent jurisdiction to determine the status of a workman as to whether he is an employee or an independent contractor, and that pendency of such question in either tribunal cannot require an abatement in the other. There is nothing in the cases cited by

petitioner that is contrary to this rule. *Browne* v. *Superior Court*, 16 Cal.2d 593, recognizing it, saying (p. 597 [107 P.2d 1, 131 A.L.R. 276]): "This is the familiar proposition that where several courts have concurrent jurisdiction over a certain type of proceeding, the first one to assume *and exercise* such jurisdiction in a particular case acquires an exclusive jurisdiction." *Myers* v. *Superior Court*, 75 Cal. App.2d 925 [172 P.2d 84], dealt with actions to quiet title to real and personal property which dealt with specific property and as stated in the quotations from 15 C.J. 1161 and 1165 set forth in *Williams* v. *Southern Pac. Co., supra,* 54 Cal.App. 571, 575, come under a different rule than actions *in personam.* *Lee* v. *Superior Court,* 191 Cal. 46 [214 P. 972], was a case in which the commission appointed a guardian of certain minors to receive the award made to such minors before the superior court in an action later filed also appointed a guardian of the estate of said minors, which consisted merely of the claim for compensation. While the court in holding that the superior court had no jurisdiction to appoint the guardian used language to the effect that the *commencement* of such a proceeding in either tribunal would oust the jurisdiction of the other in a proceeding later filed, the principle applied was the one above mentioned, that where there is concurrent jurisdiction, prohibition will lie to restrain a tribunal from acting where the other has assumed *and is exercising* its jurisdiction over the same matter. (P. 49.)

"Wherever a court or board is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or nonexistence of the requisite facts." (*Palermo L. & W. Co.* v. *Railroad Com.,* 173 Cal. 380, 385 [160 P. 228].) �In Necessarily, then, when, as here, two tribunals have mutually exclusive jurisdiction, neither can be compelled to defer determination of that jurisdiction until the other has acted. But once the other has acted by actually determining and exercising its jurisdiction, that jurisdiction becomes exclusive.

As the superior court has not exercised its jurisdiction and the commission has concurrent jurisdiction of the subject matter, the proceeding before it cannot be abated as a matter of right.

Petitioner contends that if the proceeding cannot be abated as a matter of right, the writ of mandate should issue to restrain the commission from proceeding because, under the circumstances, particularly because of the agreement between

the widow and the insurer that the proceeding be abated, the commission abused its discretion in denying the abatement or stay.

### 4. Will Mandate Lie Otherwise?

■ In determining whether we might hold that the commission abused its discretion in refusing to grant a discretionary stay, we are faced with the situation that the commission has not refused to exercise its discretionary right. Apparently the agreement or stipulation between the widow and the insurer was never brought to the attention of the commission. It was not filed there until the same day Jennie's application for a writ was filed in this court. "It is the general rule that the facts as they exist at the time the application for the writ of *mandamus* is made determine the right of the petitioner and the duty of the respondent." (*Christ* v. *Superior Court*, 211 Cal. 593, 600 [296 P. 612].) The commission has never denied a discretionary stay. It has set a general hearing. Presumably, the first matter to be considered by it at such hearing would be petitioner's request for a stay. Until, with the evidence before it which petitioner claims requires the exercise of its discretion, the commission acts, there is nothing for us to review. ". . . mandamus is never granted to compel the performance of an act until there has been an actual as distinguished from an anticipated refusal . . ." (*George* v. *Beaty*, 85 Cal.App. 525, 531 [260 P. 386].) We, of course, are expressing no opinion on the effect of an agreement signed by only two of the parties to the proceeding nor on whether the commission should or should not, as a matter of discretion, stay the proceeding.

The alternative writ is discharged and the petition for a peremptory writ is denied.

Peters, P. J., and Wood (Fred B.), J., concurred.